## COURT OF COMMON PLEAS
## HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| **wineCRAFT, LLC,** | : | **CASE NO.** |
| | : | |
| **Plaintiff,** | : | **Judge** |
| | : | |
| v. | : | **PLAINTIFF WINECRAFT'S MOTION** |
| | : | **FOR TEMPORARY AND** |
| **ELV-Oregon LLC,** | : | **PRELIMINARY INJUNCTIVE RELIEF** |
| | : | |
| **Defendant.** | : | |
| | : | |

Plaintiff wineCRAFT, LLC moves this Court, pursuant to Ohio Civil Rule 65, for a temporary restraining order and preliminary injunction requiring that Defendant ELV-Oregon maintain the status quo and refrain from further violating the statutes that it has been ignoring.

This motion is based on the accompanying memorandum of law with exhibits.

Respectfully submitted,

*/s/ Benjamin C. White*
Benjamin C. White (0098232)
Aaron M. Herzig (0079371)
Taft, Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, OH 45202-3957
(513) 381-2838
(513) 381-0205 Fax
bwhite@taftlaw.com
aherzig@taftlaw.com

*Counsel for Plaintiff wineCRAFT, LLC*

## COURT OF COMMON PLEAS
## HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| wineCRAFT, LLC, | : | CASE NO. _____ |
| | : | |
| **Plaintiff** | : | Judge _____ |
| | : | |
| v. | : | **MEMORANDUM IN SUPPORT OF** |
| | : | **PLAINTIFF WINECRAFT, LLC'S** |
| ELV-Oregon LLC, | : | **MOTION FOR TEMPORARY AND** |
| | : | **PRELIMINARY INJUNCTIVE RELIEF** |
| **Defendant.** | : | |
| | : | |

This is an action to enforce Ohio law establishing the franchise relationship between wine manufacturer Defendant ELV-Oregon LLC and wine distributor Plaintiff wineCRAFT, LLC. Once such a franchise relationship is established, Ohio statutes require that, among other things,

- a manufacturer may not withhold delivery of product to the distributor;
- a manufacturer may not sell its product into Ohio through a different distributor; and
- a manufacturer may not terminate the franchise relationship absent just cause.

Because defendant has done and threatens to continue to do each of those proscribed acts, to the damage of wineCRAFT, wineCRAFT has brought this action for declaratory and injunctive relief and damages. Because it threatens to submit an immediate termination letter to the Ohio Division of Liquor Control, wineCRAFT seeks a TRO from this Court.

By this motion, wineCRAFT seeks an order from this court maintaining the status quo and prohibiting Defendant from further violating the Ohio statutes governing the franchise relationship between wineCRAFT and Defendant.

## FACTUAL BACKGROUND

### 1. Parties.

Plaintiff wineCRAFT, LLC is a limited liability company organized under Ohio law and operating in Hamilton County, Ohio. Verified Complaint, ¶2. It is one of the leading distributors of fine wines into the greater Cincinnati area, distributing wines from California, Oregon,

2

France, Italy, Spain and Austria. *Id*. Included among wineCRAFT's customers are the premier restaurants, wine bars and retail wine establishments in the greater Cincinnati area. *Id*.

Defendant ELV-Oregon, LLC is an Oregon limited liability company organized in 2007 and operating in Salem, Oregon. Defendant produces wine under the Evening Land Vineyards label and distributes it nationally, including into Ohio and Kentucky. Since 2016, Defendant has been in a "franchise relationship," as that term is defined in Ohio statutes,[1] with wineCRAFT selling it Evening Land wines.

### 2. In 2016, Defendant established a franchise relationship pursuant to R.C. 1333.83 with wineCRAFT.

In 2016, Defendant first began to distribute its products into Ohio through wineCRAFT. *Id*., ¶7. With no written franchise contract covering those sales, after the first 90 days, Ohio law established a "franchise relationship" between the parties:

> When a distributor of beer or wine for a manufacturer … distributes the beer or wine for ninety days or more without a written contract, a franchise relationship is established between the parties, and sections 1333.82 to 1333.87 of the Revised Code apply to the manufacturer, its successor or assigns, and the distributor.

Rev. Code 1333.83

At the same time, Defendant started distributing its product into Kentucky through wineCRAFT. *Id*., ¶8. The same year, when wineCRAFT was required to re-register its brands with the Kentucky liquor authorities, it reached out to Defendant's representatives to let them know of the required filing for the Kentucky sales and received back the information it needed to make those filings.

---

[1] The parties' franchise relationship is defined by the provisions of R.C. 1333.82, *et seq*., and this lawsuit revolves around those sections. For the Court's convenience, the sections are attached as Appendix 1 to this brief, with the pertinent provisions highlighted.

In August of 2020, Defendant reached out to ask that wineCRAFT relinquish its rights to sell the Sandhi brand in Ohio and Kentucky. At the time (and continuing today, according to the Evening Land website), Sashi Moorman, Defendant's managing partner, was also managing partner of Sandhi Wines, a producer of wines in Santa Rita Hills of California. wineCRAFT said it was willing to release its rights to sell Sandhi wines in Ohio upon condition that it would continue to sell the other product lines—specifically Evening Land—in Ohio and in Kentucky. Mr. Moorman agreed and, fully authorized to do so by Defendant, committed Defendant to continue to authorize wineCRAFT to sell Evening Land Vineyards in Kentucky as well as Ohio. *Id.*, ¶ 12. With offer, acceptance, and consideration, the 2020 agreement is a binding contract under Ohio law ("2020 Contract").

### 3. In 2022, Defendant unilaterally stops fulfilling wineCRAFT's orders for Evening Land.

As part of Defendant's franchise relationship with wineCRAFT, it was prohibited from withholding delivery of wine ordered by wineCRAFT "without reasonable cause." R.C. 1333.84(D)("no manufacturer … shall … [w]ithout reasonable cause, withhold delivery of alcoholic beverages ordered by a distributor").

On April 8, 2022, disregarding that obligation, Defendant determined that it would completely cut off its sales to wineCRAFT, and would not accept or fulfill any further orders from it. The purported rationale was that Evening Land did not want to sell wineCRAFT product that could end up in Kentucky under a theory—never before expressed and directly contrary to the 2020 Contract—that "Evening Land is registered with WineCRAFT in Ohio. It is not registered to WineCRAFT in Kentucky." *Id.*, ¶ 15; April 8, 2022 email from Defendant's national sales director Amy Johnson.

4

On December 8, 2022, in response to further efforts to purchase Evening Land product,

Ms. Johnson was very clear in Defendant's position—yes, we have received the orders from

wineCRAFT, but it must drop the right to sell in Kentucky or we will not provide product in

Ohio:



> **From:** Amy Johnson Amy@elvwines.com
> **Subject:** RE: Current Availabities
> **Date:** December 6, 2022 at 1:21 PM
> **To:** Alex Hue a.hue@winecraft.us
> **Cc:** Gordon Hue g.hue@winecraft.us
>
> Hello Alex,
>
> I hope you are doing well.
>
> We did receive this order, but we can't release the wine to wineCRAFT because we have not gotten written confirmation from your company indicating that you will sell our products only in Ohio, and not Kentucky or any surrounding states. If you can provide that guarantee, we can move forward. Please let me know how you would like to proceed.
>
> Thanks,
>
> Amy

**4. In February 2024, Defendant cites its own continuing refusals to fulfill wineCRAFT's orders as the basis for a purported cancellation of the franchise relationship with wineCRAFT.**

As part of the franchise relationship Defendant had entered into with wineCRAFT,

Defendant was prohibited from cancelling the franchise "for other than just cause" and not

before a 60-day notice had been provided pursuant to R.C. 1333.85:

> no manufacturer or distributor shall cancel or fail to renew a franchise … for other than just cause and without at least sixty days' written notice to the other party setting forth the reasons for such cancellation….

On February 14, 2024, Defendant's counsel sent a letter, purporting to be a notice of

termination. The letter listed three "reasons" for the cancellation:

- The fact that wineCRAFT had not purchased Evening Land wine since 2022;

5

- The "repeated attempts to contact you regarding strategies in the assigned geographic area;" and
- The fact that wineCRAFT had purportedly purchased wine "for wholesale into Ohio, which it then attempted to sell across state lines into Kentucky without authorization."

In response, wineCRAFT carefully explained the history demonstrating that none of those "reasons" is accurate and none provides just cause for cancellation of the franchise relationship established by Ohio law.

On April 30, 2024, Defendant's counsel advised:

> At this point, ELV-Oregon LLC intends to submit the termination letter to Ohio Division of Liquor Control, on the basis that we provided notice of termination over 60 days ago.

Verified Complaint, ¶ 25.

**5. Sometime before March 2024, Defendant authorized a second distributor to sell Evening Land product in wineCRAFT's marketplace.**

Another statutory provision that Defendant has violated is Rev. Code 1333.84(B) ("no manufacturer or distributor engaged in the sale and distribution of alcoholic beverages … shall … Award an additional franchise for the sale of the same brand within the same sales area or territory"). Sometime before March 21, 2024, Defendant agreed to sell its product to a different distributor, Vintner Select, which has registered a dozen Evening Land brands with the Ohio Division of Liquor Control. *Id*., ¶19.

### LAW AND ARGUMENT

To obtain injunctive relief under Ohio R. Civ. P. 65, wineCRAFT must show:

> (1) there is a substantial likelihood that the plaintiff will prevail on the merits, (2) the plaintiff will suffer irreparable injury if the injunction is not granted, (3) no third parties will be unjustifiably harmed if the injunction is granted, and (4) the public interest will be served by the injunction.

6

*Procter & Gamble Co. v. Stoneham*, 140 Ohio App.3d 260, 267, 747 N.E.2d 268 (1st Dist. 2000); *B&N Coal, Inc. v. Blue Racer Midstream, LLC*, 222 N.E.3d 140, 2023-Ohio-2641 (7th Dist.), ¶36.

"In determining whether to grant injunctive relief, courts have recognized that no one factor is dispositive. The four factors must be balanced, moreover, with the 'flexibility which traditionally has characterized the law of equity,'" *Cleveland v. Cleveland Elec. Illum. Co.*, 115 Ohio App.3d 1, 14, 684 N.E.2d 343 (8th Dist. 1996). Indeed, "[w]hen there is a strong likelihood of success on the merits, preliminary injunctive relief may be justified even though a plaintiff's case of irreparable injury may be weak. . . . [W]hat plaintiff must show as to the degree of irreparable harm varies inversely with what plaintiff demonstrates as to its likelihood of success on the merits." *Id.* at 14.

Moreover, "[i]njunctions may be prohibitory or mandatory in nature." *England v. 116 W. Main LLC*, 2023-Ohio-3086, 223 N.E.3d 606, ¶ 16 (2d Dist.); *Mike Lapine, Inc. v. Cleveland Business Show, Inc.*, 8th Dist. Cuyahoga No. 50028, 1986 WL 3700, *5 ("A temporary restraining order may be mandatory in nature requiring an affirmative act be done since the maintenance of the status quo may require the doing of a positive act or the undoing of an act which has already been completed"). "A prohibitory injunction preserves the status quo by enjoining a defendant from performing the challenged acts in the future.'" *Id.*, quoting *Heartland of Urbana OH, L.L.C. v. McHugh Fuller Law Group, P.L.L.C.*, 2016-Ohio-6959, 72 N.E.3d 23, ¶ 87 (2d Dist.). On the other hand, "[a] mandatory injunction * * * is an extraordinary remedy that compels the defendant to restore a party's rights through an affirmative action." *Id.* In other words, "a prohibitory injunction is used to prevent a future injury, but a mandatory injunction is

used to remedy past injuries.*" State ex rel. Gen. Motors Corp. v. Indus. Comm.*, 117 Ohio St.3d 480, 2008-Ohio-1593, 884 N.E.2d 1075, ¶ 12.

**1. wineCRAFT is likely to succeed on the merits of its claim.**

wineCRAFT has a strong likelihood of success on the merits of its claim.

**Refusal to sell product to wineCRAFT.**

It is fundamental Ohio law that a party to a contract may not unilaterally condition legally or contractually committed performance on the other party's waiving unrelated rights. The waiver of a right must be an intentional act by the party who has it. *See, e.g., Karl Kiefer Mach. Co. v. Henry Niemes, Inc.*, 82 Ohio App. 310, 315, 80 N.E.2d 183, 186 (1948) ("A prerequisite ingredient of the waiver of a right or privilege consists of an intention to relinquish it"). The other party must *intend* to relinquish that right before it is effective. *Parente v. Day*, 16 Ohio App. 2d 35, 38, 241 N.E.2d 280, 282 (Ohio Ct. App. 1968) ("To constitute a valid waiver there must be an existing right, knowledge of that right, and an intention to relinquish such right").

To be effective, such a "waiver"—a separate agreement—"must be supported by a consideration." *Marfield v. Cincinnati, D. & T. Traction Co.*, 111 Ohio St. 139, 145, 144 N.E. 689, 691 (1924); *West v. P.D.G. Dev., Inc.*, 646 N.E.2d 920, 922 (Mun. 1994) ("In order to establish a waiver, it must be shown that the person against whom the waiver is asserted intended to relinquish the rights"). The performance of a statutorily obligated duty cannot be consideration for the waiver of a contract right. *See Shannon v. Universal Mortg. & Disc. Co.*, 116 Ohio St. 609, 621, 157 N.E. 478, 481 (1927) ("A promise to do what the promisor is already bound to do cannot be a consideration . . . as a general rule, the performance of . . . an existing legal obligation is not a valid consideration"); *Cuspide Properties, Ltd. v. Earl Mech. Servs.*, 53 N.E.3d 818, 831 (Ohio Ct. App. 2018) ("A promise to complete an already existing obligation does not constitute consideration to support a contract"); *Rhoades v. Rhoades*, 321 N.E.2d 242,

8

245 (Ohio Ct. App. 1974) ("It is elementary that neither the promise to do a thing, nor the actual doing of it will constitute a sufficient consideration to support a contract if it is merely a thing which the party is already bound to do"). Thus, a party may not justify its nonperformance of an agreement by pointing to a later promise that, if only the other party had done *X*, *then* it would have complied. *Cuspide Properties*, 53 N.E.3d at 831 (Ohio Ct. App. 2018) (observing that a promise to complete a project it had already agreed to complete is not a valid defense).

Defendant ignored these principles when it demanded—as additional consideration for its already legally obligated duty to fulfill wineCRAFT's orders—that wineCRAFT abandon a contract right it had no obligation to abandon. Verified Complaint, ¶¶14, 16. Even though Defendant was required to fulfill wineCRAFT's orders under the terms of R.C. 1333.83 and R.C. 1333.84—and recognized that it had received those orders—Defendant refused to fulfill them unless wineCRAFT relinquished its separate contract right to sell Evening Land product in Kentucky:



From: **Amy Johnson** Amy@elvwines.com
Subject: RE: Current Availabilities
Date: December 6, 2022 at 1:21 PM
To: Alex Hue a.hue@winecraft.us
Cc: Gordon Hue g.hue@winecraft.us

Hello Alex,

I hope you are doing well.

We did receive this order, but we can't release the wine to wineCRAFT because we have not gotten written confirmation from your company indicating that you will sell our products only in Ohio, and not Kentucky or any surrounding states. If you can provide that guarantee, we can move forward. Please let me know how you would like to proceed.

Thanks,

Amy

9

The Ohio statute is clear: "no manufacturer … may … [w]ithout reasonable cause, withhold delivery of alcoholic beverages ordered by a distributor. Rev. Code 1333.84(D). "[W]e can't release the wine to wineCRAFT" is exactly withholding deliver of alcoholic beverages ordered by a distributor. And the leverage sought to be exerted—give up your contract rights to sell in Kentucky—is not and cannot as a matter of law be reasonable cause.

**Purported cancellation of franchise relationship.**

The fundamental question on the cancellation of the franchise relationship Defendant asserts is whether there is just cause for cancellation. The reasons that Defendant has asserted— and continues to assert—are three:

- no purchases of Evening Land wine since 2022;
- "repeated attempts to contact you regarding strategies in the assigned geographic area;" and
- wineCRAFT's purported purchases of wine "for wholesale into Ohio, which it then attempted to sell across state lines into Kentucky without authorization."

None of those provides a basis for termination.

**No purchase of wines.** It is clear that the reason there have been no purchases since April of 2022 is not because wineCRAFT has failed to submit orders—it is that Defendant has refused to fulfill them. The lack of purchases since April of 2022 are because of Defendant's actions, not those of wineCRAFT, and it is likewise fundamental that one who causes its counter-party's nonperformance may not assert that nonperformance as a breach. *Lucarell v. Nationwide Mut. Ins. Co.*, 152 Ohio St.3d 453, 2018-Ohio-15, 97 N.E.3d 458, ¶54 ("a party who prevents another from performing its contractual obligations cannot rely on that failure of performance to assert breach of contract"). The doctrine is based on the "long-established principle of law that a party should not be able to take advantage of its own wrongful act." *Id.*

The Court need look no further than Defendant's December 2022 *admission* it had received wineCRAFT's order to see the falseness of this claimed basis for just cause for cancellation.

**Strategies in the assigned territory.** Again, this is the result of Defendant's actions, not those of wineCRAFT. Recall that wineCRAFT invited Defendant to come and display its product at an organized wine dinner at Boca, one of the premier Cincinnati restaurants. Defendant said no, unless wineCRAFT gave up its rights to sell in Kentucky. Verified Complaint, ¶15. It was wineCRAFT, not Defendant, that made the efforts to make contact about expanding Defendant's brand in the region. Defendant's assertion to the contrary is patently false.

**Attempts to sell Ohio-purchased wine in Kentucky.** It is clear that Defendant's authorized representatives—up to and including its managing partner—agreed to and even contractually committed to wineCRAFT's sale of Evening Land product in Kentucky. Verified Complaint, ¶¶ 9-12. Notwithstanding that fact, the third basis in the notice of cancellation is:

> Lastly, upon information and belief [sic], we understand that Wine Craft previously purchased wine from ELV-Oregon, LLC for wholesale into Ohio, which it then attempted to sell across state lines into Kentucky without authorization.

"Information and belief" is hollow legalese in light of Defendant's *actual knowledge* that it authorized wineCRAFT to sell in Kentucky. The statement is simply made up out of whole cloth.

2. **wineCRAFT will suffer irreparable injury for which there is no adequate remedy at law if the injunction is not granted.**

The structure of the Ohio franchise relationship statutes are there for a precise reason—to encourage distributors like wineCRAFT to invest in promoting their brands in the marketplace so that consumers will demand those brands. That is the heart of wineCRAFT's business. It works to convince the many restaurants and retail establishments to which it sells that the products it

represents are high quality, worthy of consumption, and, if a customer likes the product, available into the future.

If a manufacturer, whose brands have had the advantage of wineCRAFT's investments in the marketplace, can take that brand and move it to another distributor, that not only impacts wineCRAFT's profits, it undercuts its credibility in the marketplace. *S. Glazer's Distributors of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 853 (6th Cir. 2017) ("When a distributor loses a unique product . . . it threatens their relationship with the retailers that have come to rely on the distributor for the in-demand product. . . . This loss of customer goodwill is a prime example of intangible, irreparable harm"). And it threatens the stability of its business. *Tri-Cnty. Wholesale Distributors, Inc. v. Wine Grp.*, Inc., 565 F. App'x 477, 483 (6th Cir. 2012) (finding irreparable harm when distributor who had promoted and distributed "several unique, high velocity wines" for decades lost the product). That is why the statutes are written as they are, and it is why wineCRAFT is and will continue to be irreparably harmed by Defendant's actions.

**3. It is in the public interest that Ohio's statutory rules governing franchise relationships be enforced.**

The General Assembly enacted Rev. Code 1333.82, *et seq*., for a reason. An injunction to require compliance with those statutes is necessarily in the public interest.

**4. An injunction would not harm third parties.**

The only third party potentially impacted here is the second distributor that Defendant has identified and, apparently, agreed to start selling Evening Land product to. But that party is no innocent third party. It knew exactly what it was getting into. As a distributor of wines operating in Ohio, it knows the Ohio liquor laws. It knows from the filings with the Board of Liquor Control that wineCRAFT is selling the Evening Land brands. There can be no harm to it for having sought to take advantage of Defendant's unlawful conduct.

The balance of the equities supports granting wineCRAFT's request for a temporary restraining order and preliminary injunction.

Respectfully submitted,

*/s/ Benjamin C. White*
Benjamin C. White (0098232)
Aaron M. Herzig (0079731)
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, OH 45202-3957
(513) 381-2838
(513) 381-0205 Fax
bwhite@taftlaw.com
aherzig@taftlaw.com

*Counsel for Plaintiff wineCRAFT, LLC*

## CERTIFICATE OF SERVICE

This is to certify that a true and accurate copy of this motion was served upon the following person by email this 8th day of May, 2024:

James G. Neikamp
Neikamp Law Ltd
4725 Cornell Rd
Cincinnati, Ohio 45241
Ph: (513) 993-9000
Fax: (513) 672-0287
james@neikamplaw.com

*Counsel for ELV-Oregon, LLC*

*/s/ Benjamin C. White*

# APPENDIX 1



AUTHENTICATED,
OHIO LEGISLATIVE SERVICE
COMMISSION
DOCUMENT #235435

## Ohio Revised Code

### Section 1333.82 Alcoholic beverages franchise definitions.

Effective: June 30, 2006
Legislation: House Bill 530 - 126th General Assembly

As used in sections 1333.82 to 1333.87 of the Revised Code:

(A) "Alcoholic beverages" means beer and wine as defined in section 4301.01 of the Revised Code.

(B) "Manufacturer" means a person, whether located in this state or elsewhere, that manufactures or supplies alcoholic beverages to distributors in this state.

(C) "Distributor" means a person that sells or distributes alcoholic beverages to retail permit holders in this state, but does not include the state or any of its political subdivisions.

(D) "Franchise" means a contract or any other legal device used to establish a contractual relationship between a manufacturer and a distributor.

(E) "Good faith" means the duty of any party to any franchise, and all officers, employees, or agents of any party to any franchise, to act in a fair and equitable manner toward each other so as to guarantee each party freedom from coercion or intimidation; except that recommendation, endorsement, exposition, persuasion, urging, or argument shall not be considered to constitute a lack of good faith or coercion.

(F) "Brand," as applied to wine, means a wine different from any other wine in respect to type, brand, trade name, or container size.

(G) "Sales area or territory" means an exclusive geographic area or territory that is assigned to a particular A or B permit holder and that either has one or more political subdivisions as its boundaries or consists of an area of land with readily identifiable geographic boundaries. "Sales area or territory" does not include, however, any particular retail location in an exclusive geographic area or territory that had been assigned to another A or B permit holder before April 9, 2001.

AUTHENTICATED,
OHIO LEGISLATIVE SERVICE
COMMISSION
DOCUMENT #235442

## Ohio Revised Code
### Section 1333.83 Written franchise agreement.

Effective: July 23, 2004
Legislation: House Bill 306 - 125th General Assembly

Every manufacturer of alcoholic beverages shall contract with or offer in good faith to its distributors a written franchise providing for, and specifying the rights and duties of both parties in effecting, the sale of the specified brands or products of the manufacturer. Any provision of a franchise agreement that waives any of the prohibitions of, or fails to comply with, sections 1333.82 to 1333.87 of the Revised Code is void and unenforceable. Any notice or acceptance required to be given or made by either party to the franchise shall be in writing and signed by the authorized representative of the parties. Any breach, actual or claimed, of a franchise made pursuant to this section shall not be grounds for suspension or revocation of any permit or supplier registration issued by the division of liquor control. When a distributor of beer or wine for a manufacturer, or the successors or assigns of the manufacturer, distributes the beer or wine for ninety days or more without a written contract, a franchise relationship is established between the parties, and sections 1333.82 to 1333.87 of the Revised Code apply to the manufacturer, its successor or assigns, and the distributor.

AUTHENTICATED,
OHIO LEGISLATIVE SERVICE
COMMISSION
DOCUMENT #235454

# Ohio Revised Code
## Section 1333.84 Prohibited acts.

Effective: July 30, 2013
Legislation: Senate Bill 48 - 130th General Assembly

Notwithstanding the terms of any franchise, no  manufacturer or distributor engaged in the sale and distribution  of alcoholic beverages, or a subsidiary of any such manufacturer,  shall:

(A) Fail to act in good faith or without just cause in acting  or purporting to act under the terms of a franchise or in  cancelling or failing to renew a franchise;

(B) Award an additional franchise for the sale of the same  brand within the same sales area or territory. No franchise  prohibits a retail permit holder having permits at more than one  location from buying from one or more B-2 or B-5 permit holders,  even if all permit premises are not located in the same franchise  area or territory. Nothing contained in this division shall be  construed as modifying the provisions of section 4301.241 of the  Revised Code. Nothing contained in this division precludes a  manufacturer of wine from awarding a franchise, or requires a  manufacturer of wine to award a franchise, for the sale of a new  brand to any B-2 or B-5 permit holder.

(C) Require a distributor to submit profit and loss  statements, balance sheets, or financial records as a requirement  to retain its franchise;

(D) Without reasonable cause, withhold delivery of alcoholic  beverages ordered by a distributor, or change or amend a  distributor's quota of a manufacturer's product or brand;

(E) Coerce a distributor by any means to participate in or  contribute to any local or national advertising fund controlled  directly or indirectly by a manufacturer;

(F) Refuse to recognize the rights of surviving partners,  shareholders, or heirs and fail to act in good faith in accordance  with reasonable standards for fair dealing, with respect to the  distributor's right to sell, assign, transfer or otherwise dispose  of the distributor's business, in all or in part, except that the  distributor shall have no right to sell, assign, or transfer the  franchise without the prior consent of the manufacturer, who shall  not unreasonably withhold the manufacturer's consent.

AUTHENTICATED,
OHIO LEGISLATIVE SERVICE
COMMISSION
DOCUMENT #235454

(G)(1) On and after the effective date of this amendment, do either of the following:

(a) Award a distribution franchise or territory to itself, to a subsidiary, or to another entity in which it has any financial interest, directly or indirectly, by stock ownership, or through interlocking directors in a corporation, or otherwise, if that franchise, territory, or portion of that territory has been previously awarded, sold, assigned, or transferred to a distributor;

(b) Acquire a franchise or territory if that franchise, territory, or portion of that territory has been previously awarded, sold, assigned, or transferred to a distributor.

(2) Division (G)(1) of this section does not prohibit a manufacturer or subsidiary of a manufacturer from continuing to operate a distribution franchise or distribute alcoholic beverages within a designated territory if prior to the effective date of this amendment the manufacturer either acquired the distribution franchise or territory, or awarded the franchise or territory to itself or a subsidiary.

(3) Division (G)(1) of this section does not, and shall not be construed to, limit the actions that may be taken in accordance with an A-1c permit under section 4303.022 of the Revised Code or a B-2a permit under section 4303.071 of the Revised Code.

(4) Notwithstanding division (G)(1) of this section or any permit requirement under sections 4303.06, 4303.07, 4303.071, 4303.08, 4303.09, and 4303.10 of the Revised Code, if a distribution franchise is canceled or territory is substantially changed by a manufacturer pursuant to either division (A)(1) or (2) of section 1333.85 of the Revised Code, the manufacturer may acquire or award itself the franchise or territory for not longer than one hundred eighty days from the date of cancellation. After the one hundred eighty day period, the manufacturer shall sell or transfer the franchise or territory to a distributor in which the manufacturer does not have any financial interest, directly or indirectly, by stock ownership, or through interlocking directors in a corporation, or otherwise.

AUTHENTICATED,
OHIO LEGISLATIVE SERVICE
COMMISSION
DOCUMENT #235473

# Ohio Revised Code
## Section 1333.85 Cancellation, failure to renew or substantial change in territory.

Effective: November 9, 1994
Legislation: Senate Bill 209 - 120th General Assembly

Except as provided in divisions (A) to (D) of this section, no manufacturer or distributor shall cancel or fail to renew a franchise or substantially change a sales area or territory without the prior consent of the other party for other than just cause and without at least sixty days' written notice to the other party setting forth the reasons for such cancellation, failure to renew, or substantial change.

(A) Neither party shall be required to give to the other party such notice if any of the following events occur:

(1) The filing of a petition in bankruptcy or an assignment for the benefit of creditors by the other party;

(2) The filing of an involuntary petition in bankruptcy against either party, which petition is not dismissed within thirty days;

(3) The cancellation, revocation, or suspension for more than thirty days of any permit required to be held by either party to authorize the handling of alcoholic beverages.

The occurrence of any one of the foregoing events shall constitute just cause for cancellation or failure to renew a franchise or substantially changing a sales area or territory without the prior consent of the other party.

(B) The occurrence of any of the following events shall not constitute just cause for cancellation of or failure to renew a franchise or substantially changing a sales area or territory without the prior consent of the other party:

(1) The failure or refusal on the part of either party to engage in any act or practice which would result in a violation of any federal law or regulation or any law or rule of this state;

Page 1

AUTHENTICATED,
OHIO LEGISLATIVE SERVICE
COMMISSION
DOCUMENT #235473

(2) The restructuring, other than in bankruptcy proceedings, of a manufacturer's business organization;

(3) A unilateral alteration of the franchise by a manufacturer for a reason unrelated to any breach of the franchise or violation of sections 1333.82 to 1333.86 of the Revised Code by the distributor;

(4) A manufacturer's sale, assignment, or other transfer of the manufacturer's product or brand to another manufacturer over which it exercises control.

(C) If a manufacturer or distributor cancels or fails to renew a franchise, the distributor shall sell to the manufacturer and the manufacturer shall purchase from the distributor all of the distributor's inventory of the manufacturer's products and sales aids at the laid-in cost to the distributor including freight and cartage, provided that upon payment therefor the distributor shall transfer to the manufacturer good title to all such property free of liens and encumbrances.

(D) If a successor manufacturer acquires all or substantially all of the stock or assets of another manufacturer through merger or acquisition or acquires or is the assignee of a particular product or brand of alcoholic beverage from another manufacturer, the successor manufacturer, within ninety days of the date of the merger, acquisition, purchase, or assignment, may give written notice of termination, nonrenewal, or renewal of the franchise to a distributor of the acquired product or brand. Any notice of termination or nonrenewal of the franchise to a distributor of the acquired product or brand shall be received at the distributor's principal place of business within the ninety-day period. If notice is not received within this ninety-day period, a franchise relationship is established between the parties. If the successor manufacturer complies with the provisions of this division, just cause or consent of the distributor shall not be required for the termination or nonrenewal. Upon termination or nonrenewal of a franchise pursuant to this division, the distributor shall sell and the successor manufacturer shall repurchase the distributor's inventory of the terminated or nonrenewed product or brand as set forth in division (C) of this section, and the successor manufacturer also shall compensate the distributor for the diminished value of the distributor's business that is directly related to the sale of the product or brand terminated or not renewed by the successor manufacturer. The value of the distributor's business that is directly related to the sale of the terminated or nonrenewed product or brand shall include, but shall not be limited to, the appraised market value of those assets of the distributor principally devoted to the sale of the terminated or nonrenewed product

AUTHENTICATED,
OHIO LEGISLATIVE SERVICE
COMMISSION
DOCUMENT #235473

or brand and the goodwill associated with that product or brand.



AUTHENTICATED,
OHIO LEGISLATIVE SERVICE
COMMISSION
DOCUMENT #235478

# Ohio Revised Code

## Section 1333.851 Distributors of acquired manufacturers.

Effective: December 30, 2008
Legislation: Senate Bill 320, House Bill 420 - 127th General Assembly

(A) With respect to any merger, acquisition, purchase, or assignment under division (D) of section 1333.85 of the Revised Code, both of the following apply:

(1) The territories for the particular product or brand of alcoholic beverage shall not be assigned to another distributor until the successor manufacturer compensates the terminated or nonrenewed distributor for the diminished value of the distributor's business.

(2) When a distributor receives written notice of termination or nonrenewal of its franchise pursuant to division (D) of section 1333.85 of the Revised Code, the distribution of beer or wine for ninety days or more without a written contract shall not constitute a franchise relationship between the successor manufacturer and the distributor under section 1333.83 of the Revised Code.

(B) With respect to the merger, acquisition, or purchase of a manufacturer by a successor manufacturer or the purchase or assignment of a product or brand to a successor manufacturer under division (D) of section 1333.85 of the Revised Code, all of the following apply:

(1) Except as otherwise provided in division (B)(2) of this section, within seventy-five days after a distributor receives written notice of termination or nonrenewal of its franchise pursuant to division (D) of section 1333.85 of the Revised Code, the distributor shall provide the successor manufacturer with the three previous years of financial statements and other relevant and reasonably necessary financial information regarding the diminished value of the distributor's business. The distributor and successor manufacturer shall negotiate in good faith to determine the diminished value of the distributor's business, and the successor manufacturer shall pay the distributor for that diminished value.

(2) If the distributor and successor manufacturer are unable to negotiate in good faith or are unable to resolve the distributor's diminished value within ninety days of the date that notice of termination is given, either party may bring an action in the court of common pleas of the county in which the

AUTHENTICATED,
OHIO LEGISLATIVE SERVICE
COMMISSION
DOCUMENT #235478

distributor's principal place of business in this state is located  within ninety days of the date that notice of termination is  given, except that the parties may mutually agree in writing to  extend that ninety-day period.

(3) The court of common pleas shall determine the diminished  value of the distributor's business within ninety days after the  action is filed. The successor manufacturer shall pay the  distributor the amount of diminished value the court determines.  Upon payment of that amount by the manufacturer to the  distributor, the successor manufacturer may transfer the brands to  a new distributor.

(4) Either party may appeal the decision of the court of  common pleas to the court of appeals. The filing of an appeal does  not stay the successor manufacturer's payment of diminished value  to the distributor or the successor manufacturer's transfer of  brands to a new distributor.

(5) If the court is unable to determine the diminished value  of the distributor's business within ninety days after the action  is filed, the court shall order the successor manufacturer to pay  its last good faith offer to the distributor on the ninety-first  day after the action is filed and shall treat the manufacturer's  application for that order as a request for emergency injunctive  relief without the need for any showing of irreparable harm. Upon  payment of the amount of its last good faith offer to the  distributor, the successor manufacturer may transfer the brands to  a new distributor. After the successor manufacturer's payment of  that amount to the distributor and its transfer of the brands, the court shall determine the diminished value of the distributor's  business. The successor manufacturer shall pay the distributor the  amount of the diminished value determined by the court less the amount of its last good faith offer previously paid pursuant to  division (B)(5) of this section.

(6) The parties by mutual agreement may extend or shorten any  of the time deadlines set forth in this section.

---

*The Legislative Service Commission presents the text of this section as a composite of the section as amended by multiple acts of the General Assembly. This presentation recognizes the principle stated in R.C. 1.52(B) that amendments are to be harmonized if reasonably capable of simultaneous operation.*

AUTHENTICATED,
OHIO LEGISLATIVE SERVICE
COMMISSION
DOCUMENT #235489

# Ohio Revised Code

## Section 1333.86 Distributor to maintain adequate physical facilities and personnel.

Effective: July 26, 1974

Legislation: House Bill 857 - 110th General Assembly

During the effective period of a franchise, the distributor shall maintain adequate physical facilities and personnel so that the product or brands of the manufacturer are at all times properly represented in the sales area of the distributor, the reputation and trade name of the manufacturer are protected, and the general public receives adequate servicing of the products or brands of the manufacturer. The distributor shall at all times act in good faith.

AUTHENTICATED,
OHIO LEGISLATIVE SERVICE
COMMISSION
DOCUMENT #235502

## Ohio Revised Code

### Section 1333.87 Liability for violation.

Effective: May 20, 1992
Legislation: Senate Bill 284 - 119th General Assembly

---

Any manufacturer or distributor who directly or through an officer, employee, or agent violates sections 1333.82 to 1333.86 of the Revised Code is liable to the party injured by such violation for all reasonable damages sustained by the party that are the proximate result of the unlawful act of the manufacturer or distributor, his officer, employee, or agent. An action to recover such damages and for other relief may be brought only in the common pleas court in the county in which the distributor's principal place of business in this state is located.

---